UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIMOTHY C SULLIVAN, ET AL.,<br><br>Plaintiffs,<br><br>v.<br><br>SII INVESTMENTS, INC.,<br><br>Defendant. | Case No. 18-cv-00666-SI<br><br>**ORDER DENYING PLAINTIFFS' MOTION FOR LEAVE TO FILE MOTION FOR PARTIAL RECONSIDERATION OF ORDER DENYING TEMPORARY RESTRAINING ORDER**<br><br>Re: Dkt. No. 32 |

Plaintiffs Timothy Sullivan and Frank Cuenca have moved for leave to file a motion for partial reconsideration of this Court's Order (Dkt. No. 30) ("TRO Order") issued on February 20, 2018, denying plaintiffs' application for a temporary restraining order ("TRO"). Upon careful consideration of the plaintiffs' arguments, and the record in this case, the Court DENIES plaintiffs' motion.

**BACKGROUND**

The TRO Order provides a summary of the alleged facts and procedural history in this case. Briefly, since 2008, plaintiffs were registered stockbrokers at defendant SII Investments, Inc. In 2017, SII sold itself to another brokerage firm, Linsco Private Ledger Financial ("LPL"). Plaintiffs were subsequently told that LPL would not be taking them on as employees. While plaintiffs sought to register with other brokerage firms, defendant terminated plaintiffs and notified the Financial Regulatory Authority ("FINRA") that the termination was "for cause" through a Form U5 filing. The U5 filing complicated plaintiffs' efforts to search for a new brokerage firm and to be licensed in certain states with the new brokerage firm. SII gave

plaintiffs' clients notice that their accounts would be transferred to LPL unless the clients expressly opted out.

Plaintiffs filed the TRO application on January 30, 2018, requesting the Court: transfer plaintiff Sullivan's funds from his deferred compensation; enjoin defendant from transferring plaintiffs' client accounts to LPL; and order defendant to amend the Form U5 filing.[1] Dkt. No. 7. The Court denied plaintiffs' TRO request on February 20. Dkt. No. 30. On March 5, plaintiffs filed this motion. Dkt. No. 32. Plaintiffs seek reconsideration of the TRO Order only on the client account transfer issue, on the grounds that: (1) plaintiffs have newly discovered evidence indicating that SII is "soliciting" plaintiffs' clients, and is "blocking" transfer of plaintiffs' client accounts to plaintiffs' new brokerage firm; and (2) the Court failed to address the factual and legal merits underlying the client account transfer issue separately from the U5 filing issue. *Id*.

The Court directed defendant to respond to plaintiffs' allegations that SII was preventing the transfer of plaintiffs' client accounts. Dkt. No. 44. On March 12, 2018, defendant filed a timely response. Dkt. No. 45. Defendant avers it "promptly investigated Plaintiffs' claims" upon receiving plaintiffs' motion and determined that defendant was not blocking or preventing transfer of the accounts at issue. *Id.* at 2:15-17; *see* Dkt. No. 46 (Declaration of Jim Miller, Senior Vice President of Operations with SII Investments, Inc.). Pershing LLC, the custodial brokerage firm housing the client accounts, informed defendant that Pershing places a "temporary hold on" certain requests for account transfer as an "automatic safeguard . . . to confirm customer transfers." Dkt. No. 45 at 2:18-24; Dkt. No. 46 at ¶ 6. Miller communicated to plaintiff Cuenca that Pershing told Miller the transfer was in progress; that "SII was not holding up anything"; and to provide Miller account numbers so that SII "could work with Pershing to help complete the transfers." Dkt. No. 46 at ¶ 10. On March 14, plaintiffs filed, with the Court's permission, two declarations in support of plaintiffs' contention that SII continues to block transfer of plaintiffs' client accounts. Dkt. Nos. 47, 49-51.

---

[1] The parties have since resolved the first issue.

2

Under the Civil Local Rules, a party must obtain leave of the Court before moving for reconsideration. N.D. Cal. Civil L.R. 7-9(a). In its motion for leave, the "moving party must specifically show [(a)] reasonable diligence in bringing the motion and [(b)] one of the following: (1) That at the time of the motion for leave, a material difference in fact or law exists from that which was presented to the Court before entry of the interlocutory order for which reconsideration is sought. The party also must show that in the exercise of reasonable diligence the party applying for reconsideration did not know such fact or law at the time of the interlocutory order; or (2) The emergence of new material facts or a change of law occurring after the time of such order; or (3) A manifest failure by the Court to consider material facts or dispositive legal arguments which were presented to the Court before such interlocutory order." N.D. Cal. Civil L.R. 7-9(b).[2]

A district court may revise an interlocutory order "at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b); *see also Amarel v. Connell*, 102 F.3d 1494, 1515 (9th Cir. 1996) ("the interlocutory orders and rulings made pre-trial by a district judge are subject to modification by the district judge at any time prior to final judgment") (quoting *In re United States*, 733 F.2d 10, 13 (2d Cir. 1984)). Nevertheless, "a court should generally leave a previous decision undisturbed absent a showing that it either represented clear error or would work a manifest injustice." *Abada v. Charles Schwab & Co., Inc.*, 127 F. Supp. 2d 1101, 1102-03 (S.D. Cal. 2000).

**DISCUSSION**

**I. Newly Discovered Evidence**

The Court finds plaintiffs have brought this motion with reasonable diligence by filing the motion within two weeks of the TRO Order. Plaintiffs argue that four pieces of evidence are

---

[2] *See Sch. Dist. No. 1J, Multnomah Cty., Or. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993) ("Reconsideration is appropriate if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law.") (citing *All Hawaii Tours, Corp. v. Polynesian Cultural Ctr.*, 116 F.R.D. 645, 648 (D. Haw. 1987), *rev'd on other grounds*, 855 F.2d 860 (9th Cir. 1988)), *cert. denied*, 512 U.S. 1236 (1994) (Mem.).

newly discovered: (1) a FINRA email asking the parties for a copy of a TRO; (2) a letter sent by SII to "solicit" plaintiffs' clients[3]; (3) an email from defendant counsel, Edgerton, characterizing the 60-day extension of time before transferring plaintiffs' clients to LPL as a "settlement offer" that plaintiffs declined; and (4) SII's "freeze" of plaintiffs' accounts to prevent transfer to plaintiffs' new brokerage firm, IAA. Dkt. No. 32 at 3:9-4:17; 6:3-8:25.

Plaintiffs present two pieces of evidence to support their contention that SII is blocking transfer of plaintiffs' client accounts to IAA. First, plaintiffs allege that client accounts for which paperwork had been submitted were transferred to IAA up until February 23, 2018, but were no longer being transferred as of February 27. Dkt. No. 34 at ¶¶ 8-10. Neither calls to Pershing nor to SII provided plaintiffs with a reason for why the accounts were not being transferred. *Id.* Second, when plaintiff Sullivan called SII, he was told that "all your accounts (and Mr. Cuenca's as well) are blocked." *Id.*

Defendant responds that Pershing "has an automatic safeguard in place to confirm customer transfers and places a temporary hold" on certain transfer requests until it can "verify information." Dkt. No. 45 at 2:15-25; Dkt. No. 46 at ¶ 6. Defendant indicates that on March 9, 2018, it requested "regular updates from Pershing regarding the status of transfers" to "facilitate transfers of [plaintiffs'] accounts." Dkt. No. 45 at 3:1-7. On the same day, defendant received confirmation from Pershing that plaintiffs' account transfer was "in process." *Id.*

Plaintiffs maintain the absence of any account transfers since February 27, 2018 is evidence that SII is blocking the transfers. Plaintiffs argue that the transfer block is not "normal" because the notification about the blocked transfer did not come with a message explaining the reason for the block; SII and Pershing employees have told plaintiffs that SII has blocked transfer of the accounts; and Miller made "inconsistent statements" to plaintiff Cuenca regarding the

---

[3] In the email from Edgerton, he confirmed that SII sent the letter to the clients. Dkt. No. 33-4. Edgerton described the letter as "encourag[ing] SII clients to make a decision and find a registered representative they would like to do business with." *Id.*
      The Court does not agree with plaintiffs' characterization of the letter as a "solicitation," as it clearly encourages transferring an account to "a local registered representative" of the client's choosing, without reference to any particular brokerage firm. Dkt. No. 35-1.

4

reason for the block on March 12, 2018.[4] Dkt. No. 50 at ¶¶ 5, 8-10; Dkt. No. 51 at ¶¶ 4-6.

Although plaintiffs have presented facts that were not before the Court at the time of its earlier decision, they do not materially alter the Court's analysis. Plaintiffs have not provided here, or in their earlier papers, why they are likely to succeed on the merits, and do not raise a significant question going to the merits. At most, the new facts speak to the potential harm plaintiffs may suffer without a TRO. The Court finds these new facts do not outweigh the other TRO factors, and thus do not materially alter the Court's prior analysis.[5]

In addition, the Court is unpersuaded by plaintiffs' allegations that SII is blocking transfer of their accounts to IAA. The record indicates that transferring a client account requires multiple entities, including the brokerage firms SII and IAA, as well as the custodial brokerage firm Pershing, to coordinate the transfer process. *See* Dkt. No. 32 at 8:20-25 (". . . Mr. Sullivan received notice from Pershing, the entity with actual legal custody of the accounts, that SII had blocked the transfer of client accounts for Plaintiffs, irrespective of the clients'[*sic*] having signed all necessary transfer forms authorizing the transfer of their accounts from SII to IAA."); Dkt. No. 50 at ¶ 5 (". . . the Pershing managed money group known as Pershing Adviser Solutions, which is the entity that will hold the accounts that are being re-registered to IAA."); Dkt. No. 51 at ¶ 3 ("[Transferring client accounts] involves preparing transfer paperwork . . . , sending the paperwork out for signature, and then taking the signed forms and submitting them to IAA and ultimately, to the "carrying broker", in this case Pershing LLC, so that Pershing can transfer the account registration . . . to [IAA]."). It appears there are systems in place to ensure proper transfer of client accounts. *See* Dkt. No. 45 at 2:21-25. In this context and in view of the record as a whole, the Court does not agree with plaintiffs that SII has been blocking the account transfers in the manner

---

[4] Cuenca states that Miller told him: "a. There was no block; b. Pershing had put the block on for internal administrative reasons; c. LPL and SII had blocked all the accounts that were going to LPL; d. If [Cuenca] sent [Miller] the account numbers, [Miller] would release the accounts." Dkt. No. 50 at ¶ 9. As of March 12, Cuenca's accounts were "still blocked." *Id.* at ¶ 10.

[5] The Court also notes that plaintiffs are requesting a TRO scope that is different or broader than that originally requested. Plaintiffs argue now that its TRO request included "ordering SII not to *otherwise* interfere with the transfer [to IAA]." Dkt. No. 32 at 9:2-5 (emphasis original). The TRO application asked for SII to stop transferring plaintiffs' client accounts to LPL (or, in the alternative, stay the transfer for thirty days). *See* Dkt. No. 7 at 2:1-11; ¶ 36.

5

1    suggested by plaintiffs. Rather, the transfer "block" is attributable to Pershing's internal
2    procedures and is likely temporary. Defendant has also offered to "assist with the transfer of all
3    accounts . . . for at least another 60 days." Dkt. No. 46 at ¶11.

## II. The Courts' Evaluation of the Client Transfer Issue

Plaintiffs argue that the Court failed to evaluate the merits of the client transfer issue separately from the U5 filing issue in the TRO Order. Dkt. No. 32 at 4:19-5:25; 9:1-19. Plaintiffs contend that the claim for TRO regarding client transfer "is not based on the U-5" and does not "implicate the privilege issues posed by the U-5." *Id.* at 2:15-16.

The Court disagrees. Plaintiffs' claims for rescinding the U5 and blocking client transfer are essentially tied to their wrongful termination claim. Plaintiffs argued that SII delayed termination of plaintiffs, and deprived plaintiffs of the time necessary to find a new brokerage firm and to transfer their clients. Dkt. No. 7 at ¶¶ 10-15, 23. Further, plaintiffs made it clear that the U5 filing issue caused most of the difficulty in transferring plaintiffs' clients to IAA. *See Id.* at ¶ 13 ("[A 'termination for cause' entry on one's U5] can . . . result in a delay or inability to become licensed in many states to sell securities or insurance[.]"), ¶ 25 ("The following facts, however, show that good cause exists to order SII to rescind the "for cause" termination, because . . . it was . . . a self-serving and predatory attempt to cripple plaintiffs in order to transfer their clients to LPL . . . ."), ¶ 32 (". . . the December 7 termination for cause was a final, corrupt attempt to make it impossible for the remains of [plaintiffs'] group to move their business elsewhere."). Thus, the facts underlying the merits of the U5 filing issue are relevant to the client account transfer issue. As such, the Court finds that there was no "manifest failure by the Court to consider material facts or dispositive legal arguments" in its TRO Order regarding the client account transfer issue.

Nevertheless, the Court has reviewed the record, including plaintiffs' complaint and TRO application. The Court finds that plaintiffs have not demonstrated that a TRO with respect to the

6

client transfer issue is warranted under *Winter* or *Wild Rockies*.[6] Plaintiffs request the TRO on the grounds that defendant made "explicit promises" to plaintiffs that defendant "would not interfere with [plaintiffs] moving their clients" to their new brokerage firm, but has instead been interfering with the transfer process. Dkt. No. 32 at 5:5-18. Plaintiffs argue that they will be irreparably harmed if their client accounts are transferred to LPL, and that SII will not be harmed by preventing the transfer. Dkt. No. 7 at ¶ 23.

However, plaintiffs have not shown they are likely to succeed on the merits, and do not raise a significant question going to the merits. Plaintiffs do not cite authority demonstrating that they are entitled to injunctive relief under the present facts. *See Aniel v. GMAC Mortg., LLC*, No. C 12-04201 SBA, 2012 WL 5389706, at *2, 4 (N.D. Cal. Nov. 2, 2012) (denying plaintiffs' motion for leave to file a motion for reconsideration of the Court's Order denying a TRO because, *inter alia*, the plaintiffs failed to cite any controlling authority supporting their legal argument or their request for injunctive relief).

Further, as discussed in the TRO Order, the Court finds that plaintiffs are not likely to suffer irreparable harm in the absence of the TRO. The record indicates that client accounts were transferred to IAA until around February 27, 2018. Dkt. No. 50 at ¶¶ 3-4 ("A small sample of the accounts transferred properly to IAA at the outset."); Dkt. No. 51 at ¶ 4-5 ("Up until just before February 27th it appeared that . . . clients' accounts were being transferred to . . . IAA . . . ."); Dkt. No. 46 at ¶ 4 ("Regarding accounts held by [plaintiffs], I [(Miller)] have confirmed that 45 accounts have already transferred from Pershing out of SII to the Broker/Dealer elected by the customer."). Subsequent transfers have not occurred, but the issue relates to the "automatic safeguard" system at the custodial brokerage firm Pershing. Defendant states it has taken steps to

---

[6] In order to obtain a temporary restraining order or a preliminary injunction, plaintiff "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Resources Defense Council*, 555 U.S. 7, 20 (2008) (citations omitted). "Alternatively, the plaintiff may demonstrate that the likelihood of success is such that 'serious questions going to the merits were raised and that the balance of hardships tips sharply in the plaintiff's favor,' so long as the other two elements of the *Winter* test are met." *Fid. Brokerage Servs. LLC v. Rocine*, No. 17-CV-4993-PJH, 2017 WL 3917216, at *3 (N.D. Cal. Sept. 7, 2017) (quoting *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131-32, 1135 (9th Cir. 2011).

7

assist plaintiffs' client account transfers. Accordingly, the Court finds a TRO is not warranted. *See Wild Rockies*, 632 F.3d at 1135 (finding that "serious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest").

## CONCLUSION

For the foregoing reasons, plaintiffs' motion for leave to file a motion for partial reconsideration is DENIED.

**IT IS SO ORDERED**.

Dated: March 16, 2018

SUSAN ILLSTON
United States District Judge